Good morning, Your Honors. May it please the Court, my name is Eva Colasco, attorney for the petitioners Lin Xie and Jin Tzu-Pang. I'd like to reserve one minute for rebuttal. This case involves the denial of the petitioners' applications for asylum, withholding of removal and relief under the Convention Against Torture, based on a husband and wife who fled from China in order to escape persecution and forced sterilization because they violated China's restrictive population control policies. The issue in this case herein involves an erroneous, adverse credibility determination made against the lead petitioner by the immigration judge, or IJ, and affirmed by the Board of Immigration Appeals. As I understand this case, the only substantive claim for asylum is the lead petitioner, right? There's a derivative claim on behalf of the husband? Yes, Your Honor. Okay. With respect to the lead petitioner, the IJ was concerned that the husband who attended the hearings? I'm sorry? She was concerned that the husband? Who attended the hearings. Yes. And who could have corroborated the lead petitioner's story or testimony was not called as a witness, and she drew an adverse inference from the failure to call the husband as a witness. Was she permitted to do so? The immigration judge? Yes. Well, it's a little unclear, Your Honor, from the record of proceedings on page 77. She does not initially preclude his testimony. I don't think she ever precluded his testimony. She basically, as I understood it, invoked essentially the rule on witnesses said now if he wants to testify, he can't stay in the courtroom, he's got to leave the courtroom. And then she seemed to indicate on a number of occasions that she thought he should testify to corroborate the petitioner's claim, and for whatever reason, the husband didn't testify and stayed in the courtroom and watched. And I think that's accurate. So my question is still the same. Can the finder of fact, the immigration judge, draw an adverse inference from the failure of the lead petitioner to call the husband? She can draw an adverse inference, Your Honor. We can see to that. However, it was not clear whether or not he refused to decline to testify on his own behalf, in his own right, with respect to his own claim. I know, I understand that he was a derivative of his wife's application. However, he did undergo a beating due to the fact that they did violate the restrictive population policies. He does decline. However, when he does begin to speak and try to contribute testimony, the IJ did not allow him to testify, nor was he allowed to testify at any later point in the proceedings. What do you think the reason for that was? Well, probably because he had listened in to her entire testimony. That was precisely the reason, wasn't it, on this record? On this record. However, the husband was never questioned regarding his claim at all. He was never questioned regarding when and where the beating took place, how long. Well, but I thought his claim was, in this case, was derivative. In other words, he wasn't seeking asylum. He didn't fear prosecution if returned to China. That's what he said. He, well, as a husband and wife, yes, he was a derivative of his wife. Okay. So his wife makes this claim for which there is not much corroboration. There are some documents that are questioned, and the IJ says, it would be very helpful to me to hear what your husband has to say about this because he should have some knowledge about these things. If he wants to testify, he shouldn't stay in the room while you're testifying and listen to your testimony. And he stays, and she never attempts to call him and never put him on the stand to corroborate his testimony. Is that adverse inference enough alone to lead to adverse credibility finding? Alone, no, Your Honor, because that wasn't central. Well, his testimony was not central to her claim. Well, the point is that the immigration judge drew an adverse inference. This is a common thing in trials, to draw adverse inferences. I think the question that Judge Hurwitz wants an answer to, and so would I, is how strong an inference is there? What else, what are you relying on? You've admitted that she could draw an adverse inference, but that's not enough. So what's the problem here? What evidence, why was the evidence insufficient, if that's your argument? We throw the adverse inference into the mix. Right. It's not enough. Well, under the totality of the circumstances and the evidence admitted, the adverse inference drawn from the husband declining to testify and the adverse inference drawn from the two counterfeit documents were not central to the lead respondent's claim. She did submit numerous additional documents that would substantiate her claim, which were completely discredited by the immigration judge. Were they discredited or were they ignored, or did the immigration judge apparently fail to even acknowledge things that were legitimately in the record? Exactly, Your Honor. She failed to acknowledge a marriage certificate that was clearly contained in the record. I believe it's located at page 248 through 250, and she indicated that she disbelieved Petitioner was even married to her. Even though there was something in the record that showed that she was. Even though there was concrete evidence in the record. And the same with the child. Exactly, Your Honor. There was concrete evidence in the record to show she had a child in China. Yes, Your Honor. Actually, the household register was not found to be a counterfeit. It was not authenticated. However, no adverse determination can be drawn from that. So let's assume that the immigration judge improperly didn't evaluate those two items, but what she did have were two counterfeit items and an adverse inference and no other proof of the central issue in the case, which is whether your client had a forced abortion. There was some evidence that she was married and had a child. The question is whether she had a forced abortion. And the person in the room who could corroborate her, because one wouldn't expect to be any other corroboration except her testimony and her husband's, for some reason never gets called to the stand. Now I'm back to we have this adverse inference and a couple of counterfeit documents and no other substantive evidence except her testimony of the forced abortion. Is that enough for an adverse inference to be credibility inference to be drawn? Overall, Your Honor? Yes. No, it's not enough. What more would the I.J. need? In other words, she – well, on the evidence in this case, is it just your position that no reasonable I.J. could not believe your client, or is it your position that somehow she left something out of her findings? Well, Your Honor, she engaged in extensive speculation and conjecture even with regard to the lead petitioner's consistent testimony. She drew a negative inference on everything, particularly when the immigration judge asked the petitioner – well, she questioned the fact and the timing of when the lead petitioner was supposed to have been inserted with an intrauterine device. She questioned whether or not it had – or they had expected her to insert it upon the child in comparison to three months later after the abortion. She also questioned why she was not – the lead petitioner was not personally given a dismissal notice when the petitioner clearly testified that it was posted in front of her place of employment. She also questioned authentic documents, the identification cards in the record, simply because they didn't state their place of employment. She questioned whether or not they had worked at the indicated places of employment at all, that at no point could the petitioners or counsel at the trial level have convinced the judge. And it seems that she would have disregarded any objections or any other additional proof, no matter what they presented. Do you want her to save some time for rebuttal? Yes, Your Honor. Good point. Thank you. Yes, Your Honor. We'll hear from the government. Good morning. May it please the Court. Sherry Glazer appearing on behalf of the United States Attorney General. Your Honors, with all due respect to Petitioner, the factors that she just mentioned were not what the immigration judge based her adverse credibility finding on. Well, but there is – I'm troubled in this case, and Judge Friedman's touched on it. The immigration judge says, I can't even find any evidence that you're married. Well, that is –  There is a marriage certificate in the record. I can't find any evidence that you have a child. Well, I would disagree that there is evidence in the record that she had a child. Well, there is. Well, the House – There is evidence in the record, and it's not fraudulent, and it's not counterfeit. It may not be authenticated, but it's there. Yes, and while the immigration judge retains broad discretion in these cases to determine what weight to give documents – Well, I agree. There was documents that she didn't refer to. She said it wasn't there. There were documents that were mislabeled, that were mismarked. She clearly didn't know the whole record before. She didn't understand the record before. She just knew two things. She didn't believe this woman, and she was troubled by the fact that her husband didn't testify. Other than that, she didn't understand the documents before, what they said, what they stood for, what they meant, what even was in the record. Isn't that a fair statement of the IG? With all due respect, I disagree, because there was no birth certificate in the record for this alleged child in China. She was correct about that. And while Petitioner claims that she didn't know how to go and get a birth certificate, she knew how to get a visa. She knew how to get a visa for her husband, but she didn't get one for this alleged child. But wasn't there a second household register that was not found? In the second that she never treats? That she never treats in her findings at all? That wasn't in the record. And to the extent that, you know, Petitioner could have objected to that, she never objected to the record before the agency. And she fails to show how that prejudiced her case. Help me on this. Was there a second household register before the IG? I'm not clear on that. You know, it really isn't clear from the record. But there was. I'm sorry? You're not clear the IG wasn't clear, the BIA wasn't clear. But there was a second register. It had a number. It had a number that she never referred to, 6905 or something like that. I don't recall that being in the record.  I don't recall it being in the record. But even though you could see it was in the records, I don't recall it being in the record. So, I assume it is. And assume that the IG has failed to deal with the marriage certificate, which does rebut one of her conclusions that I'm not even sure you're married, and failed to deal with a household register, authentic or not, we don't know, because she never dealt with it, that shows that there's a child. Are those oversights sufficient for us to send the case back for further proceedings? I don't think so, because we have the other factors in the case. We have these two counterfeit documents. We have this very general testimony regarding her abortion. We have the fact that there's no birth certificate for this alleged child in China, the fact that she failed to submit documentation, you know, that she had this job, that she was fired, that her husband had some job that he was demoted from, and she failed to submit any documentation that she underwent a forced abortion. What kind of documentation would you expect one to have about a forced abortion? Perhaps she could have gotten some documentation from the hospital, and she didn't submit anything. So, really, it was substantial evidence to support the adverse credibility finding. Do we know whether Chinese hospitals are in the practice of providing evidence of forced abortions? I don't know whether they're in the practice. We've seen a bunch of these cases, and I must tell you, I've never seen corroboration from the hospital that they've forced abortion. Does she need corroboration? She does. In this case, as the immigration found, she does. Under the Real ID Act, which this case is governed by, even a credible applicant can be found to not have met their claim because they failed to submit corroborating evidence. So even if we take the evidence. How credible? Immigration judges, I believe everything you say. I believe you have a child. You had an abortion. You were tortured. All of those things happen. But you're out of luck. If the immigration judge determines that, yes, under the Real ID Act, he or she can. And no reason? Doesn't have to give a reason? Well, he or she certainly does have to give reasons, but. But, you know, when I try cases, if I believe every witness on the plaintiff's side, the plaintiff usually wins unless the law is against them. I can't just say, you lose anyway. Oh, sure. But the immigration judge can. Is that what you're telling me? No, I mean, there has to be specific reasons, specific evidence, other than the testimony that the immigration judge thinks the alien should have submitted and if it should have been reasonably available. And if the alien doesn't, then I'm sorry. No, no. Please finish. I interrupted you. I don't doubt that the immigration judge here could find the petitioner not credible. There's lots of problems in her story. It seems generic. It's quite short. She's got some fraudulent documents. That's not the issue that troubles me here. My question is whether or not if she found her not credible because she hadn't proved she was married or because she had submitted no evidence that she had a child, those are issues. We now know there's evidence in the record that our cases require her at least to confront and say, okay, maybe you are married, but it doesn't make any difference to me. That's not the ultimate issue. And maybe you had a child, but I still am not convinced you had an abortion. So my question is on these building blocks of her conclusion, where we know now she didn't confront some of the evidence in the record, does that failure on her part require us to send it back so she can take a closer look? It doesn't because the immigration judge took a step further in this case saying, well, you know, we have all this evidence. I'm not going to find you credible. But even if I did find you credible, I still find that you failed to meet your burden to show you were eligible for asylum, withholding of removal, or protection under the Act. But that confused me also, so I'm going to go ahead. Isn't it if you have had the woman at least, not the man, because he's got to make perhaps make a separate showing, but if you've had a forced abortion in China, aren't you eligible for asylum, withholding, et cetera? If you can show you have, but there's no evidence. No, I understand. But it's not an independent finding. In other words, her conclusion that she hadn't demonstrated that she met their qualifications for asylum was based entirely on her conclusion that she hadn't proved that she had a forced abortion. That she had failed to submit corroborative evidence. Yeah. Exactly. She didn't make a separate finding that, you know, that you're perfectly happy to go back to China. No. And under the Real ID Act, she is allowed to do that, to say, okay, we assume you're credible. But, you know, you still just, there's just no evidence that you had an abortion, and there's no documentation in the record. See, that's my problem here. I can't, how can you assume that she's credible when the only thing she testifies about is having an abortion, and then say, even if I assume you're credible, you're not eligible? Well, because there's no documentary evidence to support that claim, even assuming if what she says is true. Let's take this. The case law in this circuit, as I understand it, is that if we find that the IJA or the BIA misstated the record, failed to mention probative evidence, didn't give reasoned consideration to the evidence, then there's not a reasoned basis for her decision. And presumably, if an IJA had considered all of this evidence that she didn't consider, had properly read the record, had looked at the documents, and the only two other things that were not documented or corroborated were, the only one other thing was, did she have a forced abortion? And all you have was her testimony. Is the IJA entitled to say, I don't believe your testimony because you don't have documentation, or I don't believe your testimony because your husband's sitting here and he's not testifying? Assuming all of this other stuff had been corroborated by the documents, which the IJA clearly didn't look at, didn't know about, misstated the record about, the only issue is, did she have a forced abortion? Would the IJA still have been able to find that she didn't meet her burden? Right. I do. I think so, because that's really what her whole claim is based on, is this forced abortion that she had and this fear that she had. So she could say, I've listened to you and I've watched your demeanor and I don't believe you. Sure. Absolutely. Absolutely. You know, you may have a problem because what she said was, even if I find you credible, and that means even if I believe your testimony, and we've got a record where there's some holes in the record, don't we? I don't think so. I think the record is pretty clear in that there's no birth certificate, you know, there's no documentation that she was ever hospitalized or any of the factors that I mentioned. There's no birth certificate, but it's clear she had a child. I don't think it's clear she had a child, Your Honor. The child wasn't brought to this country. There's so many factors in the record that really are, I think they're enormous holes. But there is evidence that the IJA didn't treat, suggesting she had a child, which is to say the second household register. The household register. Something gets in the record. Yes. The immigration judge determined to not give those documents away in light of all the other holes in the record. She didn't. She didn't determine not to give them away.     She just ignored it. She didn't. She didn't. She just ignored the fact that they were before her, the second household register. The one that's not in the record? Well, I don't know if it's in the record or not. It's got an exhibit number. It's 0605. How do I know that? I mean, she mentioned both of them in her decision, so I wouldn't classify that she ignored them. I disagree with your reading of the record. Well, but let's assume it was in the record. Don't our cases require her to provide a reasoned explanation for rejecting it? Yes, and I believe she did. But what reasoned explanation did she give? You said she never treated it. So how could she have given a reasoned explanation for rejecting the second household register? I think she relied on the reports in the record that weren't able to either authenticate or not authenticate them. And then in light of all of the other holes in the record, she chose to give them little weight. Thank you. Okay. Thank you very much. You've got a minute, I think, a minute and a half. I thought you were going to say I submit and sit down. Go ahead. Perhaps this is a poor decision. The document I'm referring to is at the administrative record 273 through 279. It's booklet number 60579. And it was authenticated. Your Honor, are you referring to the household register? I'm referring to the household register that indicates she had a son named Peng. Yes, Your Honor, it indicates. Am I wrong? It indicates her identity, her child's identity. The only thing that was not authenticated was the notarial certificate. The judge completely ignored a large amount of evidence, including the marriage certificate She completely disregarded the country reports. She even stated on the record that had she found the petitioner to be credible, she would have presented a claim warranting granting of asylum. And we believe that the minor inconsistencies noted in the record are not sufficient to establish or to sustain an adverse credibility determination. Your Honor, with that, I submit. Thank you. I thank both counsel for their briefs and arguments in this case. And the case will be submitted.
judges: Friedman, Farris, Hurwitz